Good morning. May it please the court, Your Honors, Counsel. My name is Jasmine Morton. I represent the people of the State of Illinois in this matter. In this case, the trial judge erred in granting the defendant's motion to suppress the search of the defendant's pill bottles subsequent to her DUI arrest. There was legal justification for this search, and it was reasonable under the Fourth Amendment, though it was a warrantless search. Now, under the standard of review, a great deference is given to the factual finding of the trial judge in this matter, and only will be reversed if it's contrary to the manifest weight of the evidence. The trial judge's ruling on suppressed evidence should be reviewed de novo. Quick summation of the facts. On April 11, 2013... Wait a minute. There's not deference given whether it's against the manifest weight of the evidence, right?  Okay. Deference is only given on abuse of discretion. You're correct, Your Honor. On April 11, 2013, the defendant was arrested and charged with driving under the influence. During the motion to suppress the evidence hearing, Deputy Brian Groper testified. So on April 11, there was a be on the lookout bulletin for all officers that there was a possible DUI and a description of the car. Separate and apart from that, Deputy Groper was dispatched to Brinfield Pharmacy. When he arrived, the defendant was on site already in the ambulance. He spoke to staff in the ambulance. Those staff workers said that the defendant was stumbling, said that she had taken some medication but was not specific as to what she had taken. When the officer saw her in the ambulance, she was slipping in and out of consciousness. She appeared very lethargic in nature. So what do we know at that point in regard to this pill bottle? So at that point, the officer, it wasn't clear within his testimony at what point he came in contact with the pill bottle. He said it either happened when it was given to him by the ambulance employees, the EMTs, or at the hospital. At that point, he's just getting information about what happened. They identified which car belonged to her. That car matched the be on the lookout bulletin for the possible DUI. It was also parked on the curb, which she received a second. But our issue here is really a warrantless search issue, isn't it? Absolutely. Okay, so. So we can skip to that part. Well, I think that's what you're saying the error was by the trial judge, right? Exactly. So once the defendant is in the ambulance, the officer follows her to the hospital. He speaks to her, he speaks to the person that contacted the police, which resulted in the be on the lookout bulletin, which is her ex-boyfriend. He saw who they came in contact with earlier that day. He expressed that she appeared to be under the influence of narcotics. Based on his experience with her, that's what she appeared to be. Under the influence of he asked her not to drive, she sped off, he called the police, afraid that she would hurt herself or someone else. Now, when we get to the hospital, blood draw is done by her doctor, and the doctor notifies the officer, this woman is under the influence of opiates. At that point, the officer placed her under arrest. At that point, the officer looks inside of the pill bottles. There's no dispute with the defense counsel that she was probably caused to arrest? No dispute. Okay, so we're getting right now to the issue. Yes. So the officer, after placing her under arrest, looked inside the pill bottle, saw that there were supposed to be between 120 and 150 pills between two prescriptions, and only about a third were remaining inside the pill bottle. She was taking oxycodone and a muscle relaxer called Crispridol, excuse my pronunciation of it, but only a third were present. So at issue was whether or not the pill bottles were reasonably searched by the officer. The search was subsequent to a lawful arrest, and it was proper under three main scenarios. One, the pill bottles were abandoned. Two, if they weren't abandoned, they were on her person or within her personal space, and it was a lawful search subsequent to arrest, following that a proper inventory of the pill bottle. And a third was exigent circumstances. This was an emergency. There had already been a be on the lookout bulletin. Her car is parked on the curb. She told the ambulance EMTs that she had taken some medicine but wasn't specific, and now we know that she has opiates in her system. So those are the three main reasons why this search should not have been suppressed, as it was lawful. Now, first, as it relates to abandonment, there's no expectation of privacy when you abandon your property. I reference People v. Hoskins and People v. Sylvester in my brief where there's an abandoned purse where a defendant, she's fleeing from the police. She drops or throws down her purse. They recover her purse, and the trial judge considered it abandoned. What are the elements of abandonment? The fact that the person relinquishes possession voluntarily of their property. And what evidence is there on the record that that was passed through? Because the trial judge did not make a decision as to how her purse was actually recovered and how it came to be in the officer's possession, that point was a point of contention that's never been made clear. We just know that the officer We just don't know how the officer came about this, do we? In terms of, didn't he testify? Could have been in the ambulance? Could have been at the hospital? Correct. What do we know? He's not quite sure as to when he came in contact with the actual pill bottles. He just remembers that they were given to him either inside the ambulance or in the hospital, and they were identified as belonging to the defendant. By a third party? Correct. Okay. And the inference would be that her name is on the pill bottles also. But it's a container, isn't it? Yes. And he opened the container? Correct. And he tested the container? Did he do any testing? I don't believe so. He just opened it and did an inventory search of the pills? Exactly. After she had already been placed under arrest. So the theory is that either she abandoned the pills and that means that she has no expectation of privacy, or the pills were in her possession, she was placed under arrest and this was a lawful search subsequent to her arrest. There's no point of contention as to whether or not the officer had probable cause to arrest her. The issue is stated as whether or not... Whose possession on the record were they in when the officer first became aware of the bottle? The officer testifies that the pill bottles were in his possession. Now, yeah, but whose possession, that isn't the question of whether the officer had possession, but whose possession was the pill bottle when the officer acquired the pill bottle? That's the point that's unclear based on the testimony. We don't know if she dropped her purse outside of the ambulance, perhaps she didn't want anyone to know that that she was stumbling, she was lethargic, we don't know if she accidentally dropped her purse, if she took her purse into the ambulance. That's the point that's unclear, so regardless of whether she abandoned it or it was with her purse the entire time, the fact that the pill bottles were actually opened and counted after she was arrested makes the search reasonable. Additionally, these were exigent circumstances. The defendant was clearly under the influence of something. The doctor confirmed that through her blood draw, that was for medical purposes, it was confirmed by her appearance. Okay, what are the exigent circumstances? What is exigent circumstances? It means that there is an emergency. The fact that there is an emergency and there is not an opportunity to get a warrant at that time. What was the emergency when the defendant is receiving medical care by first responders and is in the hospital? What emergency is the officer part of that's going to impact this defendant? The emergency is the fact that there are so many unknowns. The fact that she's in the ambulance, she says she's taken some medicine, she's not clear as to what she's taken. You really think the doctors or the attendants gave that bottle to the officer for medical advice or purposes? It's not clear whether or not the doctors gave it to her or the EMTs gave them her property to hold on to while they're dealing with this emergency. EMT, fine. A medical provider. If we don't even know because he doesn't say who gave it to him or where he found it. Correct. But it appeared out of the sky into his hands from his testimony, right? Yes. Because we don't know anything more about it, do we? No, we don't. So exigent circumstances would be circumstances that the officer would be doing what? For what purpose? The officer would have the ability to inform the doctors or those that are taking care of her as to what pills she's actually on because that is the variable. That's what they do not know. And you testified to that. Those were the exigent circumstances. The argument by the people was that these were exigent. The argument, but what was it? An argument is an argument. What's the evidence? The evidence shows that this person was extremely lethargic. They were out of it. They're receiving care. The officer testified to the fact that she had taken some medicine, didn't identify what the medicine was. She was presumably given medicine while she was either in the ambulance or at the hospital as she was receiving care. The worry is that whatever she took could counteract with what she's being given. But we don't know where and at what time frame the officer was given this evidence and by whom. Correct. We are unclear as to when that occurred. We just know that the exigent circumstances. This is all speculation at this point, isn't it? As to the exigency of this circumstance to not require or to allow a It is an exception, isn't it? Correct. Okay. It is an exception. For a warrantless search. Yes. And so we should know what those circumstances are and what is the evidence? That points to that this is an emergency? Yeah, that the actual officer is playing a significant part as to why he because he can't tell us when he got it. Absolutely. I mean, if you're in a gurney receiving treatment in a hospital, you presumably don't need an officer anymore. Well, the officer stayed by her side to figure out what was actually happening in the situation and the fact that there was a be on the lookout bulletin for a car for a possible DUI. Yeah, he's not there for rendering medical services, is he? No, he's not. He's there to investigate as to what's going on. Why this person needed care in the first place. Why her car was parked on the curb. Why the be on the lookout bulletin matches her car's description. Why she was so lethargic. Isn't this in circumstances kind of a subset of or the overriding category for officer safety that we've expanded over the years? It depends on the circumstance. In this instance, I don't think it had anything to do with officer safety. At this point, she is off the road. She's in an ambulance. It's about the person's safety at this point. If she's taken something that might counteract with the drugs that she's being given, that should be found out. So he's there to care for her. I'm sorry? He's there to care for her. That's the action he's taking. The action that he's taking as an officer that is investigating what's going on as to why this person required care in the first place because clearly she was in some sort of danger that further investigation required. So once again, although this was a warrantless search, it meets several of the exceptions. Whether or not her property was abandoned, she had no expectation of privacy in that case. Whether the property was actually on her person or within her physical space as her property, it was a lawful search subsequent to her arrest and a proper inventory was done on her property after being arrested. Or this was a case of exigent circumstances. But regardless, all three exceptions will prove that the trial judge erred in denying the motion to suppress. I have a housekeeping matter for you just in the future. The notice of appeal indicates that the state is appealing from a February 23, 2016 order. And our Supreme Court rules require that you attach that order as part of the appendix. That order isn't in the appendix. So just as a housekeeping matter, we can go back and search the record and find the order, but it does make it easier for us. It's all about making it easier for us sometimes. Absolutely. If we include that order in the appendix. This is a state appeal and the state is always limited, severely restricted in the cases that they can bring to us in a criminal case. And a young certificate has been filed saying that court's ruling substantially impaired the prosecution. The court's ruling in February suppressed the blood tests. Am I correct? That was the second blood draw, yes. So when the notice of appeal was filed with the young certificate, I'm wondering if it's the blood tests, the suppression of the blood evidence that didn't substantially impair. So getting to the pill bottle, contents of the pill bottle. We have to focus on whether the court's ruling suppressing the fact that there were 50-odd pills in this pill bottle substantially impairs your ability to go forward with the prosecution. You don't have the blood test. You haven't appealed the court's ruling on the blood test. How does the presence of these 50 pills in the pill bottle allow you to prosecute her for DUI? So what would it... How could you convict her just based on possession of these pills for DUI? So, I'm sorry, I misspoke earlier. The February 13th, because there were several motions in this case, there was a motion to suppress the pill bottle and the second blood draw. The second blood draw suppression was granted. Then there was a motion to reconsider. Was there a motion to suppress the pill bottles? Perhaps I misread the record. Yes. There was a motion and then there was a motion to reconsider. And then the people filed a motion to reconsider the suppression of the pill bottle. Were there two motions to suppress? One to suppress the drug tests and one to suppress the pill bottle? At the same hearing. All right. And the pills were addressed in the written motion to suppress? That's okay. I'll look at the record. My apologies, because there were three... That's okay. I'll look at the record. So let's just... Tell me why you need the pills to prove the DUI. Because I can't... I am having trouble seeing that link. So there were two blood draws. One was done because it was medically necessary. The second was done at the request of the officer. So the second one was the one that was thrown at. The pill bottles are so essential to this case because it proves what she was actually under the influence of, coupled with the fact that the evidence of what she was under the influence of was either on her person or abandoned somewhere as to not... Okay. I understand. Thank you for answering my question. That helps me. Okay. So we really don't know what... By blood analysis, we don't know what she was under the influence of? Not at this time. We just know that she was under the influence of opiates. That's the evidence that I have before me. How do we know it was opiates? The doctor informed the officer that it was opiates. Based upon a blood draw? Correct. And the blood draw has been suppressed? The second blood draw has been suppressed. Based... Not the first. Correct. Are there no further questions? I don't see there are no other questions. Thank you. All right. Thank you, Ms. Martin. Mr. Gilfillan. Thank you. Counsel, may it please the Court, I'm Jacob Gilfillan, and I'm here on behalf of the appellee, Ms. Carrie Alcorn. Can you help me with the record? I was a good student in law school, a criminal procedure, and a motion to suppress has to identify what is to be suppressed. And I thought that I read the motion to suppress in this case, and it only addressed the blood test. Is that correct? I believe the initial motion to suppress that was filed only focused on the blood draw, and then during proofs, during Officer Grouper's testimony, the issue of the pills came up, and then it was discussed a little bit. But the State didn't have notice in the written motion to suppress that the pills were even an issue. Is that correct? Yeah, I believe that's correct. And so the trial court addressed an issue that the State didn't have notice of, which is why procedurally we require the defense attorney to be very careful in the motion to suppress that we get a good record. The reason the record, I think, the reason the record isn't developed here on who handed the pill bottle to the officer is because defense counsel didn't ask those questions and the officer didn't have notice that he would be asked those questions about who gave it to you. I mean, if the pill bottle was found on the street, there is a very different situation with regard to the lawfulness first of the seizure and then the search. So that's why I'm struggling a little bit here. I don't think there were two motions to suppress. Right. There was a motion to suppress, and then there were two subsequent motions to reconsider filed after that. The judge initially said, Mr. Defense Counsel, I'm not going to suppress the pill bottle because the State didn't have notice. Right? Yes, correct. And then the defense filed a motion to reconsider and said, you've got to suppress the pill bottle. Correct. And then the State did a motion to reconsider, the motion to reconsider. Yes. Okay. So whose burden was it in terms of suppression to establish the circumstances of the seizure? In that case, it would be the defense's burden to put forth a prima facie case as to that search was warrantless and in violation of the Fourth Amendment. And then at that point, the burden would then shift to the prosecution to put forth evidence as to why a warrantless search would be justified under the Fourth Amendment. So once that issue arose, even at the initial motion to suppress hearing, we did have some testimony from Officer Groper, and he said he did not know where he found the pill bottle. He didn't. He only could testify that it was handed to him by somebody, either somebody in the ambulance or somebody at the hospital. Right. But for the motion to suppress, to have a little more meat to it, wasn't it the defendant's burden to show how the officer got this pill bottle? He reached into the purse that was hanging on your client's shoulder without her permission. Something like that. So this record is, as Justice Holdridge said, speculative. But who is to be accountable for the weaknesses in the record in this case? I believe that the accountability would ultimately lie on both parties. Once the testimony was geared into the direction of, okay, well, how did we find this pill bottle? Where was it? That came up in the oral argument, and the prosecution, though it was not part of the written motion to suppress, the prosecution didn't elicit any other further testimony on a cross-examination, nor did they file a reply. Because it came up in the argument. The evidence had been closed. Well, and also, I think that it's important to remember that the state, when the defendant filed its motion to reconsider, and that was basically concentrated on the pill bottle, the state did not file a reply in that case. And it was not until after the court granted the Miss Alcorn's motion on the motion to suppress that the defendant answered substantively in their own motion to reconsider. And the state in that second motion to reconsider said, Judge, let us reopen the evidence. Correct. And I believe that the trial court found that that was not procedurally proper at this time, and that if the state would like to get into that testimony, then it should have elicited at the initial motion to suppress hearing. Okay. I appreciate you indulging me in clarifying the record. Right. And now you can start your argument. Thank you, Your Honor. The first argument to justify the warrantless search that the state puts forward is abandonment, that Miss Alcorn abandoned her property and therefore had no privacy interest in them, and that it was not protected by the Fourth Amendment. Now, to prove abandonment, it must be shown that the defendant's voluntary words or actions would have caused the officer, or a reasonable person in the officer's position, to believe that the defendant relinquished or, you know, intended to voluntarily relinquish her property interests. And the state cites two cases in support of that argument, the Hoskins case and the Sylvester case. In both cases, one in which the defendant was seen throwing or dropping her purse that contained contraband as she was fleeing undercover officers as they were attempting to apprehend her. And in the second, the defendant was seen placing a brown paper bag filled with contraband on a sidewalk right before he was being placed in a police car. So these cases are easily distinguished here because the officers in those cases, they saw a voluntary action by the defendants to purposely distance themselves from this illegal substance, whereas we don't have those facts in this case. The testimony is not clear as to how the officer came into contact with the pill bottle. Officer Groper testified that she was in and out of, Ms. Alcorn was in and out of consciousness. She was in the back of an ambulance being administered medication and being attended to, that she was communicated to and that she would later be transported to the hospital. And under those circumstances, it would not be reasonable for the officer in that situation to believe that, okay, she is in and out of consciousness, but she has the capacity to voluntarily relinquish her privacy interests. The trial court was not able to make a determination as to how the pills were acquired and found that consent was not given to search the pill bottle, that there was an expectation of privacy and that if the defendant lacked capacity to give consent, then there also should be a lack of capacity to voluntarily relinquish a privacy interest in property. And since the record is conflicting and unclear, if the purse or her pill bottle was found on her person, well then she clearly didn't abandon it and this argument would not hold water. But if it was not, if it was somewhere else, if the pill bottle was found at the pharmacy or somewhere at the hospital or on her person or not, if the officer had found it, if someone had given it to her, well then it clearly wasn't on her person. And then we're back to the same position where the facts don't support a voluntary relinquishing of her property interests and it wouldn't be reasonable under these circumstances to rely on that, on abandonment for failing to seek a warrant to search the pill bottle. Second, the state argues that this was a lawful search incident to arrest. Well, a search incident to arrest falls under a two-prong analysis. One is once there's an arrest, you may search the person of the arrestee and then you may also search the area under the control of the arrestee. And the scope of that area, the area scope is limited to that area in the defendant's immediate control. Now the state argues that the pill bottle was immediately associated with the defendant by simply making that statement, but the state does not point to the record or any facts that support that argument because it can't, because the record is speculative, it's conflicting and it's unclear. And the Illinois Supreme Court case, People v. Cregan, the Illinois Supreme Court adopted the rule of possession to kind of clear up this area of law as to what is immediately associated with the person, what items or containers can be searched in an incident to a lawful arrest. And the court adopted the rule of possession to where if a defendant is in actual physical possession of an item or an object when they are arrested, then that would fall under this exception and a warrant would not be required to perform the search incident to this arrest. Now in Cregan, the defendant was holding onto a luggage bag and had a, in one hand and had a laundry bag over the shoulder and the court found that, yes, in this case the defendant was in actual physical possession and after his arrest, searching those objects were, were proper under a search incident to arrest. Whereas for here, we don't have facts that the pill bottle was in actual physical possession of the defendant at the time of her arrest. And for a search incident to arrest, the way that it typically goes is you have a lawful arrest, you seize an item from the defendant and then you search it. Whereas here he says he doesn't, Officer Gruber says he could have gotten the pill bottle back at the ambulance. Well, Ms. Alcorn was not placed under arrest until later at the hospital. So if that's the case, which we don't know, now we're back to speculating, well, the object was seized and then she was placed under arrest. And then later the, the, the, the, the pill bottle was searched. And for those reasons, this argument should also, well, let's say it was found at the ambulance or, you know, hypothetically on the street. Okay. Where, where she was taken from to the ambulance. What, what would that pill bottle be allowed to be used for in this scenario? Well, it depends on, on probable cause. Yes, probable cause, but, but in order to search that item under a search incident to arrest argument, we're looking at the proximity of that item to the arrestee. So what, what, what is the search per se as you see it? Well, the, I mean, given the officer's testimony, he's in possession of a pill bottle. Yes. He was in possession of a pill bottle. And then what the search would have been of that pill bottle, or it'd be opening the container, opening the container. And it also could be the officer going into Ms. Alcorn's purse and searching. I go there. We don't have anything there. We don't have officers testimony that he held the pill bottle. Right. In that he opened the container. Right. Okay. Yes. So the search is of the pill bottle. Is there anything in the record to suggest that outside the pill bottle was the defendant's name, identity of the contents, et cetera? Well, the, the prescription bottle was in the defendant's name. So if that officer Groper was in possession, which he was, he would have been able to read on the, on the pill bottle that it did belong to the defendant. That's identity. Yes. The contents. Is there anything, any testimony as to the contents of the container? I believe that, I believe that his testimony was that the prescription would have identified, I believe, how many pills were contained. Would have. What's that? Would have. Did he identify, did he testify that it did? Well, he testified that the pills in the bottle were a quarter of that, which would have been identified on the bottle. But we don't know. But that's all that we know. We don't know if she had taken those pills and if she had. We don't know what those pills were, do we? Well, we don't know which pills were consumed. Well, we don't know. I mean, ordinary experience says some people use pill bottles to put aspirin in. Correct. Yeah, the actual pills, the testimony doesn't say that the actual pills were tested to find out what substance was in the actual pill. So we don't really know. Right. We don't know what the pills were. We don't know if she had taken the pills, if she had taken pills out of the bottle and left some at home and taken some in the pill bottle with her. So, yeah, that testimony is not in the record. You're on. Counselor, you have two minutes. Okay. The final point that was brought up in oral arguments. The inventory search. Well, yes, the inventory search, that was first raised and fully developed by the state in its own motion to reconsider, which was filed the day after the court issued its ruling granting Miss Alcorn, the defendant's motion to reconsider. And, um, the court said that, uh, well, the state tried to argue inventory, but in order to, um, to satisfy that argument, the state would need to show that an inventory is valid only when it's conducted in good faith and pursuant to standardized police procedures. And, uh, there was no evidence in the record and the trial court, uh, found that, uh, there was no evidence elicited from Officer Gruber as to what the Peoria County Sheriff's Department's inventory procedures were. Um, we don't know what the procedures were. We don't know if those procedures are reasonable because they hadn't been cross-examined. We don't have any further evidence as to their reasonableness. We don't know if they were administered in good faith. We don't know if Officer, uh, Gruber's opening the pill bottle at the hospital, if that was in accordance with those procedures. We just don't know that because that evidence is not in the record. Um, and the trial court, uh, basically found that raising that issue in its own motion to reconsider was not brought at a procedurally proper time and therefore the, the trial court, uh, denied that argument, um, basically as being time barred and that argument should also, um, stand today. Um, um, the last argument. But you're saying even if that ruling were in error, you would argue it wouldn't succeed? Um, yes. Okay. Yes, Your Honor. Um, the state also alluded to some type of exigent circumstance that it was for some reason, um, it was just that the warrantless search was justified under an exigent circumstance. Well, you know, just like all government action, police action, it needs to be reasonable and exigent circumstances are based on reasonableness and the facts and circumstances in that case. Uh, the, the state alludes to a community caretaking, I believe, or an emergency, um, you know, health issue, emergency. And the main purpose of this exception for failing to seek a warrant is that time is of the essence. There's no time to act. You must act now or else, you know, our, the, uh, seeking the warrant would be futile. Um, the officer, Officer Groper, in this case, he testified, his own testimony was that there was no emergency. He was specifically asked, you know, was there an emergency here that you had to attend to? And he said, no. So under, with his own mindset, there's not an emergency here where I need to intervene medically to, you know, miss Alcorn. You know, that argument's not reasonable based on Officer Groper's mindset, uh, in this case. Thank you, Your Honor. Thank you, Mr. Groper. Is there any further questions? I don't think so. Okay. Thank you. He didn't look at me, did he? No further questions. Thank you. Ms. Morton. Ms. Morton. Just very briefly, um, as it relates to the search incident to arrest and, uh, uh, opposing counsel's reference to Cregan, um, and what is considered within someone's, uh, scope of personal space or whether or not the item actually belongs to them, um, and I'll mention both Cregan and Robinson. Um, in Cregan, uh, the defendant challenged a warrantless search of a laundry bag and a wheeled suitcase that were immediately attached to his person, um, and the trial judge ruled that, um, the search was a valid search incident to arrest because the bags were immediately associated with his person. Even while handcuffed, the search was within the permissible scope of the search incident to arrest section. So, regardless of whether or not the purse or the pill bottles were located inside the ambulance and when the defendant was taken out of the ambulance and to the hospital, um, if it was handed over to him then, uh, regardless of what happened, um, if the purse was an abandon, it was with her. Um, there, there are only two options in that instance. It was either left somewhere, um, where she didn't want it to be found or it was immediately associated with her person and with her. I believe that those are the only, uh, two options. Unless it were taken away from her when she entered the emergency room. But it would still be associated with her person and even if she was. So, you're talking about constructive association if it were inventoried by the hospital labeled as her possessions in a bag, a Ziploc bag or something. Yes, this belongs to this. That, you're saying that that, that would be in line with the case you just cited. Yes. Um, and it's, it's parallel to if a defendant is handcuffed and inside the police car. Um, you know, whatever items are on their person or associated with their person can still be, can still be searched. But that was on the person when they were handcuffed. Didn't they have the bag over their shoulder? Yes. Okay. So, but they, did the court use some language of associated? Yes. Or did they say physically attached there too? Uh, I, I don't, it's immediately associated with the person. Immediately associated. Only lawyers would say that. That's their language. Um, Judges, we're judges and lawyers. But it's still within the permissible scope, um, of search incidents to arrest. Additionally, when it comes to, uh, the inventory aspect, this is a customary, um, administrative procedure by police officers. Um, and the fact that, um, the motions to reconsider were framed, um, and discussed based on what had previously been argued, um, that, that limited, uh, the state in, in what could further be argued. So it became an issue as to whether or not, um, the inventory search was proper. And, and there wanted to be, or there needed to be more discussion on that based on the trial judge's ruling. And when asked to provide proofs on that specific issue, since that seemed to be a point in contention, um, we weren't allowed to do so. Uh, but we still find that this is a customary administrative procedure. Why weren't you, uh, why weren't you allowed to do so in this hearing? Um, after our, our motion, there was a motion to reconsider, um, the, the pill bottle evidence, which was then suppressed, and we filed a motion to reconsider that denial, or that suppression. Yeah, but I think Justice Wright was asking that question originally when you walked into the courtroom on a motion to suppress. Mm-hmm. The subject of that motion to suppress was what? Was the blood evidence. Blood evidence. And during that hearing on that motion, pill bottle evidence was then discussed. And how was that brought in? Uh, through testimony. But, right, but by whom? How did you know the subject, when did you know the subject matter of suppression was more than just blood evidence in the hearing? Um, through argument. So, uh, the trial judge then said, I'm not going to suppress the pill bottle evidence, I'm just going to suppress the second blood draw. Then we come into this motion to reconsider on the. And you're not saying that was there at that point. Correct. I mean, her ruling at that point, she said, I'm not going to. Deal with the pill bottle evidence. Correct. But, she ruled on the blood evidence. Blood evidence. And said that is suppressed. Yes. Okay. Then when did she rule on the pill bottle? During the motion to reconsider. The first motion to reconsider. Which was on a later date, correct? Yes. And did you know that the subject matter on the motion to reconsider on the pill bottle was subject matter of that hearing? Yes, we were aware of that, but it was, the argument. And that was brought by the defendant? Yes. So you knew that there would be some argument there, presumably, that you would like to have some exceptions to a warrantless search, right? Correct. And we framed our argument below, based on how the motion was crafted, what arguments we, given notice as to what was going to be argued, that's what we responded to. Okay, but you knew that they were trying to suppress the pill bottle? Yes. Okay. And you knew it was a warrantless search, right? Correct. And so, wouldn't you be prepared for exceptions to a warrantless search? Absolutely. So specific exceptions in responding to their motion, and that particular, the inventory aspect, wasn't a part of their response. Or it wasn't a part of their motion to reconsider. Yeah, but the whole subject matter was to reconsider what about the pill bottle? The refusal to rule on the pill bottle? The refusal to rule on it, whether it was, there were several arguments. I believe it was the exigency argument, it was the abandonment argument, and I believe it was also the search incident to arrest argument, but not necessarily or specifically as to the inventory aspect of it. If there are no further questions, we ask that you reverse the trial judge's suppression of the evidence. Thank you. Thank you, Ms. Morgan. Thank you both for your arguments. Tremendous job. We reject this matter under advisement. We thank you for the written disposition. Thank you. Thank you.  Thank you.